UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TONIA L. SENECAL,

                    Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                          **06-CV-0215**
JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


## Introduction

1.      Plaintiff Tonia L. Senecal challenges an Administrative Law Judge's

("ALJ") determination that she is not entitled to a period of disability insurance

benefits ("DIB") or eligibility for supplemental security income benefits ("SSI")

under the Social Security Act ("the Act").  Plaintiff alleges she has been

disabled since May 6, 2002, because of depression, anxiety, asthma and

insomnia, and abdominal pain.


## Procedural History

2.      Plaintiff filed an application for DIB and SSI on February 12, 2004,

alleging she was disabled because of depression, anxiety, asthma, and

insomnia.[1]  Her application was denied initially and, under the prototype

model of handling claims without requiring a reconsideration step, Plaintiff

was permitted to appeal directly to the ALJ.  See 65 Fed. Reg. 81553 (Dec.

26, 2000).   Pursuant to Plaintiff's request, an administrative hearing was held

---

[1] By the time of Plaintiff's hearing before the ALJ on July 13, 2005, she also claimed she was disabled by recurring abdominal pain.

on April 6, 2005, before ALJ Carl Stephan, at which time Plaintiff appeared. The ALJ postponed the hearing to allow Plaintiff time to seek representation. Plaintiff appeared before ALJ Stephan again on July 13, 2005, accompanied by her attorney.  The ALJ considered the case *de novo*, and on September 12, 2005, issued a decision finding that the Plaintiff was not disabled.  Plaintiff requested review of the ALJ's decision by the Appeals Council.  On December 21, 2005, the Appeals Council denied Plaintiff's request for review.

3.     On February 17, 2006, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting that the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant DIB and SSI benefits to Plaintiff.[2]  The Defendant filed an answer to Plaintiff's complaint on June 1, 2006, requesting that the Court dismiss Plaintiff's complaint.  On July 17, 2006, Plaintiff submitted a Motion and Memorandum to Vacate Commissioner's Decision (Plaintiff's Brief), requesting that the Court set aside the Commissioner's decision and award benefits to Plaintiff.  The Defendant filed a Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedures, on August 18, 2006.[3]  After full briefing, the Court deemed oral argument unnecessary and took the motions under advisement.

---

[2] The ALJ's September 12, 2005, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.
[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under Northern District General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

**DISCUSSION**

**Legal Standards and Scope of Review:**

4.      A court reviewing a denial of disability benefits may not determine

*de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383

(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d

Cir. 1990).  Rather, the Commissioner's determination will only be reversed if

it is not supported by substantial evidence or there has been a legal error.

See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615

F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts

to "more than a mere scintilla," and it has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427,

28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more

than one rational interpretation, the Commissioner's conclusion must be

upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported

by substantial evidence, a reviewing court considers the whole record,

examining evidence from both sides, because an analysis of the substantiality

of the evidence must also include that which detracts from its weight."

Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If

supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff and

despite that the court's independent analysis of the evidence may differ from

the [Commissioner's]."  <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y.

1992).  In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own

judgment for that of the [Commissioner], even if it might justifiably have

reached a different result upon a *de novo* review."  <u>Valente v. Sec'y of Health</u>

<u>and Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

      6.     The Commissioner has established a five-step sequential

evaluation process to determine whether an individual is disabled as defined

under the Social Security Act.  <u>See</u> 20 C.F.R. § 404.1520, 416.920.  The

United States Supreme Court recognized the validity of this analysis in <u>Bowen</u>

<u>v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119

(1987), and it remains the proper approach for analyzing whether a claimant

is disabled.

      7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently
engaged substantial gainful activity.  If he is not, the [Commissioner]
next considers whether the claimant has a "severe impairment" which
significantly limits his physical or mental ability to do basic work active-
ties.  If the claimant has such an impairment, the third inquiry is whether,
based solely on medical evidence, the claimant has an impairment
which is listed in Appendix 1 of the regulations.  If the claimant has
such an impairment, the [Commissioner] will consider him disabled with-
out considering vocational factors such as age, education, and work
experience; the [Commissioner] presumes that a claimant who is
afflicted with a "listed" impairment is unable to perform substantial gain-
ful activity.  Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's severe impairment,
he has the residual functional capacity to perform his past work.  Finally,
if the claimant is unable to perform his past work, the [Commissioner]
then determines whether there is other work which the claimant could
perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since May 6, 2002, her alleged onset of disability date.  She has met the insured status requirements of the Social Security Act through June 30, 2005 (R. at 16)[4]; (2) Plaintiff has not engaged in substantial gainful activity since May 6, 2002 (R. at 16); (3) The medical evidence establishes that Plaintiff has asthma and mental impairments, but does not establish medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4 (R. at 16); (4) Plaintiff's subjective complaints are inconsistent with the objective findings in the record (R. at 16); (5) Plaintiff has

---

[4] Citations to the underlying administrative record are designated as "R."

retained the residual functional capacity to perform unskilled, simple, low stress sedentary work which requires lifting up to 10 pounds, walking for four hours out of an eight-hour workday, standing for two hours out of an eight-hour workday with occasional kneeling and crouching, and frequent handling, grabbing, and grasping large objects for the majority of an eight-hour workday, which work does not require a great deal of exposure to others (R. at 16); and (6) Plaintiff has retained the residual functional capacity to perform her past relevant work as an order picker (R. at 16).  Accordingly, the ALJ determined Plaintiff was not entitled to a period of disability, Disability Insurance Benefits, or supplemental security income payments under Sections 216(i), 223, 1602 and 1614(a)(3)(A), respectively, of the Social Security Act (R. at 16).

**Plaintiff's Allegations:**

10.    Plaintiff challenges the ALJ's determination that Plaintiff is not disabled and asserts the ALJ's decision is not supported by the substantial evidence of record.  Specifically Plaintiff alleges that (1) the ALJ did not consider and properly evaluate all of Plaintiff's evidence concerning her abdominal pain, (2) the ALJ failed to adequately assess Plaintiff's credibility, and (3) the ALJ improperly assessed Plaintiff's ability to return to her past employment.  See Plaintiff's Brief, pp.1-2.  The Court will address each of Plaintiff's allegations in sequence.

**ALJ Did Not Consider and Evaluate All Plaintiff's Evidence of Abdominal Pain:**

11.     Plaintiff's first challenge to the ALJ's decision is that he did not evaluate all of the evidence Plaintiff submitted regarding her claims of abdominal pain.  Specifically, Plaintiff alleges the ALJ did not consider 181 pages of medical records submitted after the date of Plaintiff's hearing, especially evidence from treating physicians that Plaintiff was undergoing continued treatment for abdominal pain during June 2005, and afterward. See Plaintiff's Brief, 2-10.  The Court disagrees with Plaintiff's first challenge for the reasons set forth below.

Plaintiff's medical record documents a history of periodic complaints of abdominal pain beginning May 25, 2001 (R. at 139).  Plaintiff complained to her nurse practitioner of pain in her lower left quadrant.[5] Id. No irregularities were revealed during a physical examination of Plaintiff.  Id.

On November 30, 2001, Plaintiff was examined by treating physician Dr. Wendy Gilchrist (R. at 167-168).  Plaintiff complained of pain in her lower left quadrant when she moved or coughed (R. at 167).  She also told Dr. Gilchrist that she had diarrhea for the preceding three days, but did not normally have trouble with her bowels.  Id.  Dr. Gilchrist noted she had no explanation for Plaintiff's abdominal pain, but opined it might be gastroenteritis (R. at 168).

Plaintiff was next examined by treating physician Dr. Todd Gorman, on January 24, 2002 (R. at 165-166).  Plaintiff's primary medical complaint was dysuria, or painful urination, that had been occurring for two weeks (R. at 165).  Plaintiff's urinalysis was negative, but Dr. Gorman recommended she

---

[5] The lower left quadrant in gastroenterology is the lower left abdominal region.

continue with a course of Cipro[6] that had been prescribed several days earlier (R. at 166).

On January 28, 2002, Plaintiff was examined by Dr. Gilchrist (R. at 162-164).  The doctor noted Plaintiff continued to complain of dysuria, even though she was taking Cipro (R. at 162).  Plaintiff also told Dr. Gilchrist her bowel movements were always irregular, but she had no blood or mucous in her stool, and had never been told she had irritable bowel syndrome.  Id.  The doctor assessed Plaintiff as having a gynecological, rather than a urinary, problem (R. at 164).

Plaintiff underwent a gynecological examination on January 31, 2002 (R. at 136-137).  While the examination revealed normal results, the doctor recommended a sonogram to determine the source of Plaintiff's pelvic pain (R. at 136).

Plaintiff was examined by Dr. Gilchrist again on February 26, 2002 (R. at 160-161).  Plaintiff continued to complain of dysuria, and the doctor recommended Erythromycin and a renal ultrasound (R. at 161).  Plaintiff's abdominal, pelvic, and gynecological examinations were normal.  Id.

On March 25, 2002, Plaintiff had a follow-up examination with Dr. Gilchrist (R. at 158-159).  Plaintiff reported no further dysuria after completing the course of Erythromycin, no abdominal pain, and no problem with her bowels (R. at 158).  However, the doctor noted Plaintiff was "really quite

---

[6] Cipro is the abbreviation for ciprofloxacin and is the generic international name for the synthetic antibiotic prescribed for a broad range of bacterial infections.

irritable today.  She is very upset about her job and feels like she has lousy hours.  She is spending very little time with her daughter."  Id.

Plaintiff reported severe abdominal cramping to her treating gynecologist, Dr. Olaf Franzon, on November 13, 2002 (R. at 135).  Dr. Franzon noted Plaintiff's earlier pelvic sonogram revealed a possible small cyst, and recommended a second sonogram and a CT scan of Plaintiff's pelvis.  Id.

Plaintiff's second sonogram was completed on November 13, 2002 (R. at 152-153).  Dr. Frazon noted the result suggested possible diverticulitis (R. at 152).

Plaintiff underwent a pelvic CT scan on November 19, 2002 (R. at 151).  The examination revealed a 10 centimeter segment of the mid-sigmoid colon with surrounding inflammatory changes.  Id.  The radiologist opined the result of the examination was consistent with inflammatory bowel disease, including Crohn's disease, diverticulitis, or colitis.  Id.  Colonoscopy was recommended.  Id.

On November 20, 2002, Plaintiff reported her "pains [are] starting to go away" (R. at 133).

Plaintiff was examined by treating gastroenterologist Dr. Judy Weissman on December 2, 2002 (R. at 132).  The doctor reviewed the results of Plaintiff's CT scan and suggested they were consistent with Crohn's disease or diverticulitis.  Id.  However, the doctor noted that Plaintiff reported "absolutely no problems," and that she was "completely back to baseline" with

"no change in bowel habits" and "no diarrhea."  Id.  Dr. Weissman opined a full colonoscopy was unnecessary and flexible sigmoidoscopy would be sufficient as a follow-up to Plaintiff's ailments.  Id.

On September 28, 2003, Plaintiff gave birth to a healthy, full-term baby and requested immediate post-partum sterilization (R. at 120-121).

Plaintiff reported abdominal cramping again on November 4, 2003 (R. at 119).  Her doctor recommended a sonogram to check for a retained placenta.  Id.  The sonogram was completed on November 5, 2003, with normal results.  Id.

On November 10, 2003, Plaintiff underwent a six-week post-partum examination (R. at 188).  The result was normal, and other than up and down moods, Plaintiff reported no physical problems.  Id.

In December 2003, Plaintiff reported severe cramping in her lower abdomen to treating gastroenterologist Dr. Peter Moses (R. at 402).  Dr. Moses recommended a full colonoscopy.  Id.

Plaintiff underwent a colonoscopy on February 17, 2004, with essentially normal results (R. at 400).

On April 8, 2004, Plaintiff was examined by State agency consulting physician Dr. Nader Wassef (R. at 169-172).  The doctor noted Plaintiff's chief complaints were depression, insomnia, and asthma (R. at 169).  Dr. Wassef's report does not mention Plaintiff complained of abdominal pain, and upon examination, her bowel sounds were normal, her abdomen was soft and non-tender, with no masses, or abdominal bruits (R. at 171).  In his medical

source statement, the doctor opined Plaintiff should avoid exposure to extreme heat and cold, perfumes, chemicals, second-hand smoke, and respiratory irritants, "all due to her bronchial asthma" (R. at 172).  Dr. Wassef detected no other evidence of physical limitations.  Id.

Also on April 8, 2004, Plaintiff was examined by State agency consulting psychologist Dr. Brett Hartman (R. at 173-177).  Dr. Hartman noted Plaintiff's complaints of depression, asthma, and insomnia (R. at 173-174).  After completing his examination, Dr. Hartman opined Plaintiff had a fair prognosis, given her past higher level of functioning, but did have problems with social interaction, relating adequately with others, and dealing appropriately with the normal stressors of life (176-177).

Plaintiff visited the emergency room on August 20, 2004, complaining of six days of abdominal cramping (R. at 286-287).  The intake nurse noted Plaintiff appeared to be in no acute distress, and examination results were normal except for lower abdominal tenderness (R. at 287).  The physician on duty recommended Plaintiff have a CT scan of her abdomen and pelvis to rule out diverticulitis, but Plaintiff left without the test, citing child care problems (R. at 285).

Plaintiff was treated in the emergency room again on December 16, 2004, for low back pain (R. at 277-278).  The emergency physician diagnosed sciatica, with no known injury (R. at 278).

On December 23, 2004, Plaintiff was admitted to the hospital with low throbbing back pain (R. at 266-268).  The attending physician diagnosed

possible colovaginal fistula (R. at 267-268).  While in the hospital, Plaintiff

was examined by treating gastroenterologist Dr. Jeffrey Gretz (R. at 269-270).

She complained to Dr. Gretz of low back pain with intermittent sharp pain

discomfort (R. at 269).  A CT scan ordered by Dr. Gretz revealed Plaintiff had

inflammation of the rectal and vaginal wall (R. at 270).  Dr. Gretz opined

Plaintiff likely had inflammatory bowel disease, and ordered a sigmoidoscopy.

Id.  The examination of Plaintiff's sigmoid colon revealed normal results with

no evidence of diverticulosis (R. at 265).  A rectal biopsy was also normal (R.

at 248).

On January 3, 2005, Plaintiff was again examined by Dr. Gretz

when she complained of abdominal pain and intermittent diarrhea (R. at 246-

247).  Dr. Gretz reviewed the results of Plaintiff's tests, which were normal

except for the inflammation her rectal and vaginal wall (R. at 246).  The doctor

prescribed Lorcet for Plaintiff's pain, but noted "the etiology of her complaint is

unclear to me" (R. at 247).

Plaintiff returned to Dr. Gretz on March 11, 2005, again complaining

of abdominal cramping and diarrhea (R. at 244).  The doctor reviewed the

negative results of Plaintiff's colonoscopy, sigmoidoscopy, and rectal biopsy,

as well as the normal results from her physical examination.  Id.  Dr. Gretz

noted, "there is no clear-cut evidence to support the suggestion that the

patient has Crohn's disease.  It is unclear what the underlying pathology or

problem is, if any.  At this point, the patient most likely has IBS.[7]"  Id.  The

---

[7] "IBS" is irritable bowel syndrome.

doctor offered Plaintiff no new medications, and simply suggested she increase her fiber intake.  Id.

On April 11, 2005, Plaintiff complained of recurring low pelvic pain to Dr. Olaf Franzon (R. at 240-242).  Plaintiff's physical examination was unremarkable except for pelvic tenderness (R. at 241).  The doctor noted the negative results from Plaintiff's colonoscopy, sigmoidoscopy, and rectal biopsy, and assessed that Plaintiff's abdominal problems might be caused by endometriosis (R. at 241).  Dr. Franzon recommended another CT scan and ultrasound of Plaintiff's pelvis, and a laparoscopy examination.  Id.

Plaintiff underwent a pelvic CT scan and ultrasound examination on April 13, 2005 (R. at 238).  The CT scan was unremarkable, and the ultrasound failed to show any abnormalities.  Id.

On May 9, 2005, Plaintiff was admitted to the hospital for diagnostic laparoscopy to rule out endometriosis (R. at 234-236).  During the procedure, Dr. Franzon excised adhesive banding along the pelvic sidewalls, and sent the tissue to be analyzed for evidence of endometriosis (R. at 234).  The surgery revealed no abnormalities of Plaintiff's colon, liver, appendix, or gallbladder (R. at 235).  Laboratory results revealed no endometriosis (R. at 260).

Plaintiff followed-up with Dr. Franzon on May 19, 2005 (R. at 232).  The doctor noted Plaintiff complained of cramping, but assessed the problem was not gynecological, as Plaintiff had no evidence of endometriosis or pelvic

inflammatory disease.  Id.  Dr. Franzon referred Plaintiff back to Dr. Gretz for further evaluation.  Id.

Plaintiff returned to Dr. Gretz on May 27, 2005, complaining of diarrhea and right-side abdominal discomfort (R. at 243).  Dr. Gretz reviewed Plaintiff's history of medical procedures and tests with essentially negative results, and noted "I am uncertain if there is anything in particular that may help her."  Id.

On June 29, 2005, Plaintiff returned to Dr. Franzon's office complaining of nausea, vomiting, and abdominal pain (R. at 231).  She requested a referral to someone other than Dr. Gretz.  Id.  This is the last notation of medical treatment in Plaintiff's record.

While Plaintiff claims the ALJ ignored evidence that she was undergoing treatment for abdominal pain, it is clear to the Court that the ALJ properly considered the information, but did not find persuasive evidence of impairment that either by itself, or in combination with Plaintiff's other ailments, would render her disabled within the meaning of the Act.

Plaintiff's medical record establishes that beginning May 2001, she complained periodically to her physicians of abdominal pain.  However, examination and test results were normal, except for pelvic tenderness (R. at 119, 132, 135, 136, 139, 151, 160-161,167-168, 232, 234-236, 243, 260, 238, 240-242, 244, 246-247, 265, 267-268, 269-270, 286-287, 400).  The ALJ noted Plaintiff received emergency treatment in December 2004 for rectal, pelvic, and low back pain (R. at 11).  However, upon examination of Plaintiff,

treating gastroenterologist Dr. Gretz assessed only abdominal tenderness in an otherwise normal exam (R. at 269-270).  Dr. Gretz performed an examination of Plaintiff's sigmoid colon and found only moderate inflammation, without masses, tumors, or polyps (R. at 248, 270).

Plaintiff continued treatment with Dr. Gretz in January 2005, March 2005, and May 2005, but he opined "it is unclear what the underlying pathology or problem is, if any" (R. at 243, 244, 246-247).  Dr. Gretz noted that from a medical standpoint, he was uncertain that anything would help Plaintiff (R. at 243).

The ALJ noted that as Plaintiff was being treated for abdominal pain by Dr. Gretz, she was also being treated for the same complaint by Dr. Franzon (R. at 11).  The ALJ observed Dr. Franzon performed lysis and excision of pelvic adhesions in early May 2005 (R. at 11, 234-236).  However, when Plaintiff complained of abdominal pain to Dr. Franzon again in late May 2005, he assessed her problem was not gynecological and referred her back to Dr. Gretz (R. at 232).  Only one additional medical report appears on Plaintiff's record (R. at 231).  Plaintiff complained again to Dr. Franzon of abdominal pain, and requested a referral to a physician other than Dr. Gretz. Id.

Based on the above information, the Court finds the ALJ considered all of the information concerning Plaintiff's treatment for abdominal pain, including physicians' notes, correspondence, test and surgical results, but found the information did not establish that Plaintiff had an impairment

that would clearly cause more than a mild limitation of her ability to perform basic work-related activities (R. at 11).  Thus, the ALJ properly found Plaintiff's abdominal pain was a non-severe impairment.  See 20 C.F.R. §§ 404.1521 and 416.921.

**ALJ Failed to Properly Consider Plaintiff's Credibility Concerning Her Testimony of Pain and Limitations:**

12.    Plaintiff's second allegation is that by finding she was not disabled under the Act, the ALJ failed to properly consider Plaintiff's credibility when evaluating her testimony of pain and limitations.  As an example, Plaintiff claimed she had "a lot of stomach pain," along with five to six episodes of diarrhea on a daily basis, could not sit through group meetings as part of her treatment for mental health issues, and had severe problems with concentration and focus (R. at 34-36, 40, 42).  The ALJ considered Plaintiff's testimony regarding her pain and symptoms, weighed the testimony against the objective medical evidence, and found Plaintiff's allegations concerning the frequency and severity of her symptoms and other limitations to be overstated (R. at 15).

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered.  See Ber v. Celebrezze, 333 F.2d 923 (2d Cir. 1994).  Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony.  See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y. 1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability.  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.  See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529 (b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995).  In this case, there is no question that Plaintiff's depression and anxiety are severe impairments that have more than a minimal adverse effect on her ability to perform the basic activities of work, but her claim of symptoms so severe as to be totally disabling is not supported by the objective medical evidence in the record.  Likewise, Plaintiff's claim of debilitating abdominal pain and numerous daily episodes of diarrhea is not supported by objective findings.  Thus, the ALJ considered Plaintiff's daily activities, the type and nature of the symptoms reported, the medication and other treatment Plaintiff used to alleviate her symptoms, and any other measures she used to relieve pain (R. at 11-15).  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.  The ALJ's decision shows he reviewed Plaintiff's complaints of pain and other symptoms, but found the medical and other evidence did not corroborate Plaintiff's claim of disabling pain (R. at 15).

As an example, the ALJ assessed Plaintiff had some limitations because of her severe impairments of depression and anxiety, but found that, at most, Plaintiff had only mild limitation of activities of daily living, mild to moderate difficulty relating appropriately with others, moderate problems

17

dealing appropriately with the normal stressors of life, and moderate limitation

in maintaining concentration, persistence, and pace (R. at 14-15).  In support

of his assessment, the ALJ pointed to the medical evidence provided by

Plaintiff's treating physician, Dr. Gilchrist, Plaintiff's intake evaluation and

follow-up from her counselor at Clinton County Mental Health Clinic, as well

as the opinions and findings of State agency psychological examiners and

consultants (R. at 13-14).  No treating physician, examining psychologist, or

consulting psychologist opined Plaintiff had an affective disorder that would

produce more than a moderate degree of functional limitation (R. at 13-14,

188-200).  See 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00ff.

Further, the ALJ noted in his opinion that intake records from Clinton County

Mental Health Clinic stated Plaintiff told her intake counselor that "she

recently applied for SSI for reasons of anxiety and depression and was

denied in May 2004.  She is appealing the case and was told by her lawyer

she did not have a chance of winning if she was not enrolled in mental health

treatment" (R. at 13, 225, 227).  Thus, the ALJ observed Plaintiff may have

sought mental health treatment for financial gain (R. at 15).  Plaintiff was

never hospitalized for mental health problems, did not receive continuous

therapy for her ailments, and declined to attend group therapy sessions

recommended by both her treating physician, and her counselor at Clinton

County Mental Health Clinic (R. at 15, 163, 212, 215, 227).

  With respect to Plaintiff's claims of debilitating abdominal pain and

daily episodes of diarrhea, her medical history shows she complained of, and

18

sought treatment for, various abdominal ailments beginning in May 2001. However, even with examinations and tests escalating in frequency and complexity from May 2001 until May 2005, little evidence of a problem other than possible irritable bowel syndrome was detected (R. at 119, 132-133, 135, 136-137,139, 151, 152-153, 158-159, 160-161, 162-164, 167-168, 171, 232, 234-236, 238, 240-242, 243, 244, 246-247, 248, 260, 265-270, 277-278, 285-287, 400, 402).  Plaintiff's treating gastroenterologists, Doctors Gretz, Moses, and Weissman, evaluated Plaintiff for Crohn's disease, diverticulitis, diverticulosis, masses, tumors and polyps, using procedures including sigmoidoscopy, colonoscopy, CT scans, and rectal biopsy (R. at 132, 151, 243, 244, 256-247, 248, 265, 269-270, 400, 402).  The results of Plaintiff's gastroenterological examinations and tests revealed only that Plaintiff had an inflamed rectal and vaginal wall (R. at 246).  Plaintiff was also examined on several occasions by her family physician, Dr. Gilchrist, and her treating gynecologist, Dr. Franzon, and tested using pelvic sonograms and CT scans, because of her complaints of abdominal pain (R. at  119, 135, 136-137, 151, 152-153, 160-161, 162-164, 167-168, 232, 234-236, 238, 240-242, 260).  Dr. Franzon performed diagnostic laparoscopy to rule out endometriosis (R. at 234-236).  The most significant finding revealed by these examinations and tests was that Plaintiff had mild to moderate pelvic tenderness (R. at 160-161, 241, 286-287).  Such a finding is inconsistent with Plaintiff's claim of debilitating abdominal pain.

Further, the ALJ considered Plaintiff's medications when assessing her claims of debilitating pain and other limitations (R. at 15).  With respect to Plaintiff's abdominal pain, she disclosed at her hearing that she took only Effexor to "control the muscles in my stomach," and had discontinued Prozac (R. at 37).  She reported no side effect except sleepiness (R. at 34-35).

Finally, the ALJ considered Plaintiff's activities of daily living in his assessment of her credibility (R. at 13-15).  While Plaintiff reported that she spent much of her time at home engaged in sedentary activities, the ALJ noted she was able to perform household activities, such as cooking, cleaning and laundry (R. at 14).  Plaintiff is independent in the care of her personal needs, takes care of her two young children, and can drive a car to go to doctors' appointments and other meetings.  Id.   She is able to shop for groceries with the assistance of her boyfriend (R. at 13).  While Plaintiff reported she avoids crowded public places, she gets along with family members and a friend.  Id.

In sum, this Court finds the ALJ properly considered Plaintiff's pain and symptomatology, along with the medical and other evidence in the record, and concludes that the totality of evidence does not substantiate Plaintiff's claim that her pain and other symptoms were disabling As a consequence, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented an explicit summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (R.

at 11-15).  See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d
180, 196 (2d Cir. 1984).

### ALJ Incorrectly Concluded Plaintiff's Past Employment As An Order Picker Was Relevant Employment:

13.     Plaintiff's third challenge to the ALJ's decision is that he improperly
assessed her ability to return to her past relevant employment as an Order
Picker in a warehouse.  See Plaintiff's Brief, pp. 14-15.  Plaintiff cites Hogg v.
Shalala in support of her contention that the ALJ incorrectly concluded that
she had learned the techniques, acquired the information, and developed the
abilities needed for average performance in that job.  Id.  See also Hogg
v.Shalala, 45 F.3d 276 (8th Cir. 1995).  Plaintiff claims an Order Picker has an
SVP of "3," and requires a time period of one to three months to learn to do
the work.[8]  See Plaintiff's Brief, p. 15.   Thus, Plaintiff asserts that since she
performed the work of an Order Picker for only two months, it is not past
relevant work and must be interpreted as a failed work attempt.  Id.    First,
Plaintiff is incorrect in drawing an analogy between Hogg v. Shalala and the
instant case.  See Hogg v. Shalala, 45 F.3d 276 (8th Cir. 1995).  In Hogg v.
Shalala, the claimant had borderline intelligence, a developmental age of
eight years, and a full scale IQ of 76.  Id.  From her minimal and unsuccessful
work history as a nurse's aide, the Hogg v. Shalala court determined the
claimant had no transferable work skills that would be applicable to any job
existing in significant numbers in the national and local economies.  Id.

---

[8] SVP (Specific Vocational Performance) is the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the abilities needed for average performance in a specific work situation.  See www.onetcenter.org/faqDatabase.html.

Second, Plaintiff stated she had performed her work as a warehouse Order Picker for a period of six months in both her Work History Report and upon questioning by the ALJ (R. at 33-34, 80, 103).  Thus, it can be assumed Plaintiff learned the techniques, acquired the skills, and developed the abilities that would allow her to perform the work requirements of an Order Picker at an average level.  See 20 C.F.R. § 404.1565(a).  However, the ALJ was required to determine if Plaintiff retained the residual functional capacity to perform her past relevant work, given her impairments and limitations.  See SSR 82-61.  While the ALJ considered the impact of Plaintiff's asthma and mental impairments on her ability to work, and noted these impairments had more than a minimal effect on Plaintiff's ability to work on a sustained basis, they did not meet or equal in severity the clinical criteria of any impairment listed in 20 C.F.R Part 404, Subpart P Regulations No. 4.  Further, the ALJ considered Plaintiff's complaints of abdominal pain and diarrhea, but found these ailments had no more than a minimal effect on Plaintiff's ability to engage in sustained work-related activity.  Thus, the ALJ determined Plaintiff retained the residual functional capacity to perform unskilled, simple, low stress, sedentary work that would not require significant interaction with others (R. at 16).  Plaintiff's limitations would not preclude her from performing her past relevant work as an Order Picker.  Id.

Based on the above, the Court finds the ALJ assessed Plaintiff's limitations caused by her impairments, analyzed the functional requirements of Plaintiff's past relevant employment as an Order Picker, considered the

time Plaintiff had spent in the job, and concluded she was capable of performing that past relevant work.  Thus, the ALJ correctly found Plaintiff not disabled under the Act.  See 20 C.F.R. §§ 404.1560 and 416.960.

14.     After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions.  It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians, consulting physicians, and State agency medical examiners, and afforded Plaintiff's subjective claims of pain, diarrhea, depression, insomnia and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled.  The Court finds no reversible error and further finding that substantial evidence supports the ALJ's decision, the Court grants Defendant's Motion for Judgment on the Pleadings and denies Plaintiff's motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:  March 24, 2008
         Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge